OPINION
{¶ 1} Defendant, Mahogany Patterson, appeals from her convictions for felony murder, aggravated robbery, involuntary manslaughter and theft, and the sentences imposed by the trial court pursuant to law.
 {¶ 2} On the afternoon of June 7, 2005, Defendant Patterson and three other young women, Toneisha Gunnell, Alicia McAlmont and Renada Manns, traveled from Columbus to the Upper Valley Mall in Springfield. McAlmont drove the women to Springfield in her sister's rental car. The four women shared a common criminal purpose, plan or scheme: to steal clothing from stores in the mall, and they all participated in that criminal enterprise. After stealing clothing from the Macy's store, Patterson, Gunnell and McAlmont ran outside to their waiting getaway vehicle that was parked along the curb in front of the northern set of doors of the Macy's store, leading to the parking lot. The vehicle was parked facing south, facing oncoming traffic as it sat at the curb. Renada Manns was driving the vehicle. When the three women, who by now were being pursued by a Macy's security guard, got inside the vehicle, Manns accelerated rapidly and sped off in order to avoid apprehension.
 {¶ 3} As the four women sped away in their vehicle, a pedestrian, John Deselem, was walking back into the mall from the parking lot, moving toward the southern set of doors into Macy's after retrieving his girlfriend's purse from their car. Deselem apparently saw the security guard running after the fleeing vehicle, and so Deselem stopped, turned and faced the oncoming vehicle and waived his arms in an effort to stop the vehicle. The vehicle did not stop, however, and it struck Deselem, resulting in fatal injuries. Manns drove off out of the mall parking lot without slowing down or stopping. The vehicle was discovered by police a short time later, not far from the mall, with much of the stolen merchandise yet inside. The next day all four defendants turned themselves in to Columbus police.
 {¶ 4} Defendant Patterson and her three co-defendants were each charged by indictment with one count of felony murder, R.C. 2903.02(B), one count of aggravated robbery, R.C. 2911.01(A)(3), one count of involuntary manslaughter, R.C. 2903.04(A), and one count of theft, R.C.2913.02(A)(1). Defendant filed a motion seeking a separate trial from her co-defendants, which the trial court denied. Following a jury trial in which all four Defendants were tried together, Defendant Patterson and her co-defendants were each found guilty as charged on all counts.
 {¶ 5} Defendant Patterson subsequently filed a Crim.R. 29 motion for judgment of acquittal notwithstanding the verdict and a motion for a new trial. On November 17, 2005, the trial court merged Defendant's convictions for sentencing purposes and sentenced Defendant to concurrent prison terms of fifteen years to life for murder and ten years for aggravated robbery. On January 4, 2006, the trial court overruled Defendant's motions for a new trial and for a judgment of acquittal notwithstanding the verdict.
 {¶ 6} Defendant timely appealed to this court from her convictions and sentences. She presents nine assignments of error for review. We will address the second assignment of error first because our resolution of that error is dispositive of this entire appeal, and renders most of the other assignments of error moot except for the third and fourth assignments of error which we shall address separately. App.R. 12(A)(1)(c).
SECOND ASSIGNMENT OF ERROR
 {¶ 7} "APPELLANT, MAHOGANY PATTERSON, WAS DENIED EQUAL PROTECTION OF THE LAW, AS GUARANTEED TO HER BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION I, ARTICLE 10 OF THE OHIO CONSTITUTION WHEN THE STATE PLACED HER ON TRIAL BEFORE A JURY FROM WHICH A MEMBER OF APPELLANT'S RACE WAS PURPOSELY EXCLUDED."
 {¶ 8} Defendant argues that the trial court erred in denying herBatson challenge, Batson v. Kentucky (1986), 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69, to the prosecutor's use of a peremptory challenge to exclude the only African-American juror seated on the prospective panel of twelve.
 {¶ 9} This same issue was also raised by Patterson's co-defendant, Renada Manns, in her appeal to this court. See: State v. Manns (Nov. 3, 2006), Clark App. No. 2005CA131, 2006-Ohio-5802, assignment of error number one. Having already adjudicated Manns' appeal, wherein we sustained this same assignment of error, we hereby adopt and incorporate into this opinion our previous decision in Manns. However, in view of arguments the State raised in an App.R. 26(A) application for reconsideration of our judgment in Manns concerning this same issue, we believe it appropriate to clarify the basis for our holding, which the State misapprehends.
 {¶ 10} First, as in any appeal, the focus of our review for error is not the conduct of one or both parties but a judgment or order of the trial court. In the present case, that is the trial court's order overruling the Batson challenge that several of the defendants presented, after and on the basis of a critical finding of fact the court made: that the prospective juror's daughter was one of several children who were injured in the prior event to which the prosecutor referred, a finding that permitted the court to proceed to hold that the reason the prosecutor proffered for striking the prospective juror, her resulting hostility to the State, was reasonable. (T. 206-207). The court abused its discretion when it made that predicate finding of fact concerning the prospective juror's daughter absent evidence needed to support it.
 {¶ 11} Second, when the defendants asked the court to resolve the critical question of fact concerning her daughter through voir dire of the prospective juror in chambers, which could have readily resolved the question, the prosecutor strenuously objected to doing so. (T. 205). That may have been done out of pique, the court having sustained the Defendant's earlier objection to reopening voir dire to allow the prosecutor to ask the prospective witness additional questions, which the prosecutor however failed to either specify or explain. (T. 195-196). Or, the prosecutor's opposition may have represented his concern that the prospective juror would then be antagonistic to the State if the needed questions were asked, when he argued that "the cat's out of the bag." (T. 205). In either event, it was the prosecutor's own recalcitrance that led the court to sustain his objection and proceed to the error the court committed.
 {¶ 12} Third, the flaw in the race-neutral explanation the prosecutor proffered is not that, if true, it failed to portray a matter apart from the juror's race that reasonably supported the prosecutor's use of a peremptory challenge. The issue for the court in a Batson challenge is not so much the reasonableness of the prosecutor's concern about a juror's view of the case, to which the court ordinarily gives great deference, but the genuineness of the prosecutor's explanation.Purkett v. Elem (1995), 514 U.S. 765, 131 L.Ed.2d 834, 115 S.Ct. 1769. A similar deference cannot be afforded on that issue, consistent with the duty that Batson imposes on the court. And, in order for the court to be able to determine the genuineness of the prosecutor's explanation, the factual predicate for the prosecutor's concern must find support in the record.
 {¶ 13} For example, in Purkett the prosecutor explained that he used a peremptory challenge to strike a black juror because the juror had long hair, and the prosecutor said he believed that persons with long hair might be unfavorable to his theory of the case. Obviously, because this occurred in open court, the court could observe the length of the juror's hair and find that the prosecutor's explanation was genuine.
 {¶ 14} In State v. White, 85 Ohio St.3d 422, 1999-Ohio-281, a capital murder case, the prosecutor explained that he used a peremptory challenge to strike a black prospective juror because the juror had said during voir dire that he opposed the death penalty. Likewise, the genuineness of the prosecutor's proffered reason was a matter the court could weigh and determine from the record before it.
 {¶ 15} In the present case, unlike in Purkett and White, the factual predicate for the reason the prosecutor proffered for striking the prospective juror was not demonstrated. On his suggestion that the prospective juror's daughter was one of the children who were injured in the prior event to which he referred, the prosecutor could only say: "I — I think this is one of the families. I — but I — I can't remember. There's like four families. There were like four kids that were hit." (T. 204). Ironically, the prosecutor's effort to be honest was then overcome by an excess of zeal in objecting to reasonable efforts to resolve the doubts that the prosecutor's explanation presented. In the process, having sustained the prosecutor's objection to further voir dire, the court was left with a record inadequate to the finding of genuineness the court was required by Batson to make, which is that the prospective juror's daughter was one of the children involved in the incident to which the prosecutor referred.
 {¶ 16} Undeterred by the defect the explanation the prosecutor presented, the court proceeded to conclude:
 {¶ 17} "The State has exercised a peremptory challenge; and typically with peremptory challenge, they're not required to give any reason whey they use it. When counsel objects on Batson grounds, the State's required to provide a race neutral reason; and they've done that.
 {¶ 18} "This Court is very familiar with the facts of that case. I'm familiar with the group of African Americans that protested. That — that persecuted Mr. Schumaker, even though he went to extremes to have that case reviewed by independent counsel, by independent counsel that was African American; and there is no way the State of Ohio could get a fair trial with this person on the jury.
 {¶ 19} "She's upset, obviously, that — and rightfully so-that her daughter's been injured, but her anger has been displaced toward the prosecutor's office but not prosecuting that case as a felony.
 {¶ 20} "And it seems logical to the Court that she would look at this case and think why is the State so aggressively prosecuting these girls when they wouldn't prosecute the young man that injured her girl?
 {¶ 21} "And that doesn't have anything to do with race. It — it may have something to do with race in her mind as to why that's happened. But it's my opinion that the decisions made by the prosecutor's office in that case had nothing to do with the case and that their peremptory challenge in this case has nothing to do with race; but it has only to do with this prospective juror's position or familial relationship to the victim in that case." (T. 206-207).
 {¶ 22} The court's findings that the prospective juror's daughter was involved in the incident to which the prosecutor referred were wholly unsupported by the record, and its resulting finding that as a result the prospective juror is angry at the prosecutor's office and therefore that "there is no way the State of Ohio could get a fair trial with this person on the jury" is likewise unfounded. In reaching that conclusion, the court's analysis confused the reasonableness of the prosecutor's concerns about the juror's view of the case with the genuineness of the grounds for that concern.
 {¶ 23} That a concern the prosecutor voices is reasonable does not likewise demonstrate that the grounds for concern are genuine. In aBatson context, the two are separate matters for the court to determine. The court's error was in assuming that the prosecutor's grounds were genuine because his stated concern was reasonable. The court's personal knowledge concerning protests that had been voiced against the prosecutor were no basis for the finding concerning the potential juror's daughter which the court made. Furthermore, they were not only immaterial to the issue presented but lack the sensitivity that aBatson inquiry requires, and in that respect injected the one appearance of an actual Batson problem that these proceedings portray.[1]
 {¶ 24} The assignment of error is sustained.
 {¶ 25} Accordingly, Patterson's convictions and the sentences imposed thereon will be reversed, and this cause remanded to the trial court for a new trial.
THIRD ASSIGNMENT OF ERROR
 {¶ 26} "THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT PATTERSON'S MOTION FOR A SEPARATE TRIAL AND MOTION FOR RELIEF FROM PREJUDICIAL JOINDER BECAUSE OTHER ACTS OF OTHER DEFENDANTS WERE ADMITTED AGAINST APPELLANT PATTERSON."
 {¶ 27} Defendant argues that the trial court abused its discretion in refusing to grant her motion for a separate trial from her co-defendants because the joinder of all defendants for trial permitted the State to introduce evidence of other criminal acts by the co-defendants that Defendant did not participate in and would not have been admissible against Defendant if she had been tried separately.
 {¶ 28} Prior to trial Defendant filed a motion seeking a separate trial from her co-defendants. The only stated grounds were concerns that one of the co-defendants had made statements implicating Defendant in these offenses, and admission of that co-defendant's statement at a joint trial where that co-defendant does not testify would deny Defendant her Sixth Amendment confrontation rights. Bruton v.United States (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.
 {¶ 29} The trial court overruled Defendant's motion for a separate trial, finding that only one of the co-defendants, Alicia McAlmont, had made a statement implicating the other co-defendants and that anyBruton problem could be avoided or cured by redacting the names of the co-defendants from McAlmont's statement, which the court ordered done. Defendant now argues, however, that in addition to the Bruton problems, there were other problems with joining these four defendants together for trial, and that relief from joinder was warranted because joinder allowed the State to improperly introduce evidence of other criminal acts by the co-defendants in which Defendant did not participate and that would not be admissible against Defendant if she had been tried separately.
 {¶ 30} Joinder of the four defendants for trial was proper because they acted in concert and participated in the same criminal enterprise, the same series of acts and transactions, and the same course of criminal conduct. Crim.R. 8(B). The various offenses charged, which are identical for each defendant, are the result of the defendants' participation in a common scheme or plan, and the same course of criminal conduct. Under those circumstances the law favors joinder. Crim.R. 8. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. State v.Torres (1981), 66 Ohio St.2d 340, 343. An accused may move for separate trials under Crim.R. 14, but has the burden to affirmatively demonstrate that his rights to a fair trial will be prejudiced by the joinder.State v. Lott (1990), 51 Ohio St.3d 160. For an appellate court to reverse a trial court's ruling denying severance, the defendant must demonstrate that the trial court abused its discretion. Id. An abuse of discretion means more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 31} Initially, we note that Defendant did not meet her burden of furnishing the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial. State v. Torres, supra. Specifically, Defendant's motion for a separate trial was not based upon the same grounds and concerns now being raised and argued for the first time in this appeal. Defendant's motion for a separate trial was based upon concerns about aBruton problem, not concerns over whether joinder would allow the State to introduce evidence of other criminal acts by the co-defendants that Defendant did not participate in but which might be considered against Defendant by the jury. For this reason alone, the trial court did not abuse its discretion in denying Defendant's motion for a separate trial.
 {¶ 32} During the trial the State presented evidence pertaining to the theft of clothing from the Old Navy store which was accomplished via bogus returns or exchange transactions. The two defendants who directly participated in those transactions were Renada Manns and Toneisha Gunnell. There was no evidence directly connecting Defendant Patterson to those thefts, although one Old Navy employee, Elizabeth Mooreman, testified that she observed four young ladies enter the store and they had returns. Defendant argues that the Old Navy evidence constitutes "other criminal acts" that was improperly admitted against her in violation of Evid.R. 404(B) because there is no evidence, much less substantial proof, that she participated in those theft offenses at Old Navy, and that this "other acts" evidence could not have been admitted against her if the trial court had granted her request for a separate trial.
 {¶ 33} With respect to Defendant Patterson, the evidence concerning the Old Navy theft offenses does not constitute "other criminal acts" per Evid.R. 404(B) because that provision applies only to other crimes or bad acts committed by the particular defendant or witness concerned, Defendant Patterson here, not acts committed by other persons such as the co-defendants. Furthermore, the other acts with which Evid.R. 404(B) is concerned are matters that are collateral to the specific conduct that makes up the charged offenses. The Old Navy evidence in this case does not involve other crimes or bad acts committed by Defendant Patterson, much less matters that are collateral to the specific conduct giving rise to the charged offenses.
 {¶ 34} Rather, the "other acts" complained of, the Old Navy evidence, are part of the conduct that forms and gives rise to the particular offenses charged in this indictment. In that regard it must be remembered that these four defendants, acting in concert, all engaged in the same common scheme or plan, and the same course of criminal conduct: stealing clothes from various stores in the Upper Valley mall.
 {¶ 35} The State's theory of this case was that these defendants acted together in the same criminal enterprise, aiding and abetting each other in committing these theft offenses. Witness testimony, store surveillance tape, and even an admission by Patterson's counsel overwhelmingly establishes that she was one of the people who shoplifted clothing from Macy's. The theft charge included in this indictment is not limited to conduct occurring in any one particular store, but rather simply provides that with purpose to deprive the owner of property, these defendants knowingly obtained or exerted control over that property without the consent of the owner, and the value of that property exceeded five hundred dollars.
 {¶ 36} Accordingly, evidence of conduct constituting a theft offense by any of these defendants from a store in the Upper Valley mall, in furtherance of their common criminal enterprise, was admissible against all of the defendants and such evidence presented a question for the jury as to whether any particular defendant participated in or aided and abetted any particular theft offense, such as the theft from Old Navy. Here, Defendant Patterson's recourse was to simply argue that the evidence of other criminal acts by the co-defendants at Old Navy did not apply to her. The Old Navy evidence did not constitute "other acts" prohibited by Evid.R. 404(B) that was erroneously admitted against Patterson because the trial court improperly refused to grant Patterson's motion for a separate trial. No abuse of discretion on the part of the trial court in denying Patterson's motion for a separate trial has been demonstrated.
 {¶ 37} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 38} "APPELLANT PATTERSON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHEN COUNSEL FAILED TO RENEW HER MOTION FOR SEPARATE TRIALS AT THE CONCLUSION OF THE STATE'S CASE."
 {¶ 39} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id., State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 40} In this assignment of error, which depends for its validity upon the validity of the previous assignment of error, Defendant argues that her trial counsel performed deficiently because he failed to renew Defendant Patterson's motion for a separate trial at the close of the State's case, after "other acts" committed by the co-defendants had been improperly admitted into evidence against Patterson in violation of Evid.R. 404(B).
 {¶ 41} In overruling the previous assignment of error, we concluded that the evidence concerning the thefts at Old Navy did not constitute other crimes, wrongs or acts as contemplated by Evid.R. 404(B), and that the Old Navy evidence was not improperly admitted against Patterson so as to make the trial court's refusal to grant Patterson a separate trial an abuse of discretion. In other words, the admission of the Old Navy evidence did not give rise to valid grounds for renewing Patterson's motion for a separate trial, and therefore trial counsel's failure to renew that motion does not constitute deficient performance, much less resulting prejudice as defined by Strickland. Ineffective assistance of counsel has not been demonstrated.
 {¶ 42} The fourth assignment of error is overruled.
FIRST ASSIGNMENT OF ERROR
 {¶ 43} "THE MATERIAL EX-PARTE COMMUNICATIONS BETWEEN THE PROSECUTOR AND TRIAL COURT WERE IMPROPER AND REQUIRE THIS COURT TO REVERSE APPELLANT PATTERSON'S CONVICTION."
FIFTH ASSIGNMENT OF ERROR
 {¶ 44} "THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN APPELLANT, MAHOGANY PATTERSON'S CONVICTION FOR AGGRAVATED ROBBERY, FELONY MURDER, AND INVOLUNTARY MANSLAUGHTER."
SIXTH ASSIGNMENT OF ERROR
 {¶ 45} "PATTERSON'S CONVICTIONS FOR AGGRAVATED ROBBERY, FELONY MURDER, AND INVOLUNTARY MANSLAUGHTER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SEVENTH ASSIGNMENT OF ERROR
 {¶ 46} "APPELLANT WAS DENIED HER RIGHT TO A FAIR TRIAL WHEN THE PROSECUTOR, IN CLOSING ARGUMENT, MISSTATED CRITICAL LAW AND FACTS." EIGHTH ASSIGNMENT OF ERROR
EIGHTH ASSIGNMENT OF ERROR
 {¶ 47} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT SENT ITS BAILIFF INTO THE JURY DELIBERATION ROOM TO INSTRUCT THE JURY, IN RESPONSE TO THEIR QUESTION, OUT OF THE PRESENCE OF APPELLANT AND HER ATTORNEY."
NINTH ASSIGNMENT OF ERROR
 {¶ 48} "THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE FOR AGGRAVATED ROBBERY."
 {¶ 49} These remaining assignments of error have been rendered moot by our disposition sustaining the second assignment of error which requires a reversal of Patterson's convictions and the sentences imposed thereon, and a remand to the trial court for a new trial. Accordingly, we need not address these assignments of error. App.R. 12(A)(1)(c).
 {¶ 50} Having sustained Patterson's second assignment of error, her convictions and the sentences imposed thereon will be reversed and this cause remanded to the trial court for a new trial.
[1] When the Batson challenge was made, the trial court didn't require the defendants to make the prima facie showing of racial discrimination that Batson requires, and instead ordered the prosecutor to state a race-neutral reason for his exercise of the peremptory challenge. (T. 202). The court's subsequent ruling on the ultimate issue of discrimination rendered moot any insufficiency in the foundation for theBatson challenge. Hernandez v. New York (1991), 500 U.S. 352,111 S.Ct. 1859, 114 L.Ed.2d 395.
DONOVAN, J., concurs.