O’Donnell, J.,
dissenting.
{¶ 56} Respectfully, I dissent.
{¶ 57} This murder case has been litigated on three separate occasions. The first resulted in a reversal due to a Batson issue. The second resulted in a mistrial, based on juror misconduct. This appeal is from the third trial, which resulted in guilty verdicts, but which the Second District Court of Appeals reversed on double jeopardy grounds. The matter at issue before our court is whether the trial court properly granted a mistrial based on juror misconduct during jury deliberations in the second trial. In my view, the trial court properly declared a mistrial due to the misconduct of Juror No. 6, who conducted independent Internet research contrary to and in disregard of the court’s instructions. In my view, double jeopardy principles do not preclude retrial in this case. The trial court here, in the exercise of its discretion, found that a manifest necessity existed to declare a mistrial. Moreover, in a separate proceeding, the United States district court denied writs of habeas corpus seeking to bar retrial on double jeopardy grounds, finding that the mistrial declaration “was not an unreasonable application” of United States Supreme Court law, and that determination was affirmed by the Sixth Circuit Court of Appeals.
{¶ 58} This court ought not substitute its judgment for that of the trial court, as upheld by the federal district court and the federal circuit court of appeals. In my view, the intermediate state appellate court misapplied the manifest necessity standard and substituted its judgment for that of the trial court, and I would reverse its judgment and remand the matter for retrial.
*458 Facts and Procedural History
{¶ 59} The material facts of this senseless homicide case are not disputed. Toneisha Gunnell, Mahogany Patterson, Alicia McAlmont, and Renada Manns conspired to steal clothes from stores at the Upper Valley Mall in Springfield, Ohio. After stealing armloads of clothes from Macy’s Department Store, Patterson, Gunnell, and McAlmont ran toward a waiting getaway car operated by Manns. A store security guard pursued them, but as they got into the car, Manns sped off to avoid apprehension.
{¶ 60} As the getaway car was speeding away, John Deselem, a mall patron, was walking across the parking lot and apparently had seen the security guard chase the fleeing vehicle. He stopped, faced the oncoming vehicle, and waved his arms in an apparent effort to stop it. Without slowing, the vehicle struck Deselem. The force of the impact propelled Deselem into the windshield, over the vehicle, and onto the asphalt, where Deselem died from blunt injuries to his head. After hitting Deselem, the vehicle sped off. A short time later police discovered it abandoned not far from the mall. Gunnell, Patterson, McAlmont, and Manns surrendered to Columbus police the following day.
{¶ 61} A Clark County grand jury indicted Gunnell, Patterson, McAlmont, and Manns on counts of murder, aggravated robbery, involuntary manslaughter, and theft. A joint trial was held in which a jury found them all guilty of all charges. Each separately appealed. The appellate court reversed their convictions based on a Batson violation. State v. Manns, 169 Ohio App.3d 687, 2006-Ohio-5802, 864 N.E.2d 657 (2d Dist.); State v. McAlmont, 2d Dist. No. 2005 CA 130, 2006-Ohio-6838, 2006 WL 3759835; State v. Patterson, 2d Dist. No. 05CA0128, 2007-Ohio-29, 2007 WL 29391; State v. Gunnell, 2d Dist. No. 2005 CA 119, 2007-Ohio-2353, 2007 WL 1429683. See generally Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
{¶ 62} Gunnell, Manns, McAlmont, and Patterson were tried a second time before a jury. Before the second trial began, the trial court addressed prospective jurors:
It’s also critical that if you are selected as a juror in this case and you get to the point where you’re deliberating, that during your deliberations * * * you only consider the evidence that’s presented to you in the courtroom during the course of this trial. And that’s absolutely critical in order for there to be a fair trial to both sides. It wouldn’t be fair to either side if jurors were in the jury room deliberating and talking about issues or facts that were not addressed during the course of the trial. For one, they may not be factual. They may not be facts. And two, the attorneys may or may not be aware of those things, and, therefore, wouldn’t be able *459 to incorporate those things into their arguments. So it is critical that you, from this point on, limit the information that you take in with respect to this case to that which is presented to you in the courtroom. And I think that you all have a pretty good understanding and idea of the importance of — of that concept.
(Emphasis added.)
{¶ 63} After empaneling the jury, the trial court further instructed: “It’s absolutely critical that from this point on, the only exposure you have to this case is from what transpires here in the courtroom.”
{¶ 64} And again before submitting the case to the jurors for deliberation, the court charged:
It is now the duty of the Court to instruct you on the law which applies to this case. The Court and the jury have separate functions. You decide the disputed facts and the Court gives the instructions of law. It is your sworn duty to accept these instructions and to apply the law as it is given to you. You may neither change the law nor apply your own idea of what you think the law should be.
It is your duty to weigh the evidence, decide the disputed questions of fact, apply the instructions of law to your findings, and render your verdict accordingly.
{¶ 65} During late-night deliberations, the jury asked the court to define the word “perverse” as it had been used in the jury instruction relating to the recklessness element of the aggravated-robbery charge. The court did not respond to the inquiry, but permitted the jury to retire for the evening. The next day, as the jury was returning to the deliberating room, the bailiff noticed that Juror No. 6 carried two pieces of paper, which the bailiff retrieved and delivered to the court.
{¶ 66} The first contained the following definition of the word “perverse”: “contrary to the manner or direction of the judge on a point of law <perverse verdict>.”
{¶ 67} The second stated:
Manslaughter: Involuntary
*460 Involuntary manslaughter usually refers to an unintentional killing that results from recklessness or criminal negligence, or from an unlawful act that is a misdemeanor or low-level felony (such as DUI). The usual distinction from voluntary manslaughter is that involuntary manslaughter (sometimes called “criminally negligent homicide”) is a crime in which the victim’s death is unintended.
For example, Dan comes home to find his wife in bed with Victor. Distraught, Dan heads to a local bar to drown his sorrows. After having five drinks, Dan jumps into his car and drives down the street at twice the posted speed limit, accidentally hitting and killing a pedestrian.
(Underlining sic.)
{¶ 68} As a result, the trial court conducted a voir dire examination of Juror No. 6:
THE COURT: It’s come to our attention that you brought some items in with you this morning. One appears to be a handwritten definition of the term “perverse,” and another one appears to be something that maybe you printed off of the internet that—
JUROR NO. 6: Yes, I did.
THE COURT: A definition or instruction on “involuntary manslaughter.” * * *
JUROR NO. 6: That nobody saw them.
THE COURT: You’re the only one that saw them?
JUROR NO. 6: I told [the bailiff] that I didn’t know we weren’t allowed. I’m sorry.
THE COURT: Okay. Did you—
JUROR NO. 6: And I didn’t talk about it.
THE COURT: All right. Apparently you were doing some research last night or this morning on the internet or—
JUROR NO. 6: I just wanted to see — everybody kept asking what the word “perverse” was, and I just wanted to look it up for myself to see exactly what it meant.
THE COURT: Sure. Okay. What about the — what about the manslaughter issue? Was there something you were doing on the computer with respect to that?
*461 JUROR NO. 6: No. It was just something I wanted — that was for me. I wasn’t going to show them that. I had the other — I had the definition. That was all that I was going to share.
THE COURT: Was there — was there something inadequate or something wrong with the Court’s instruction for “involuntary manslaughter” that you felt like you needed to supplement the instruction or what — was there something that wasn’t clear about the Court’s instruction on that?
JUROR NO. 6: No. I was — I was at home. I was on the computer, and I just — I did not get much sleep last night, and I just — that was mainly for myself. I just wanted to have it clear in my own head.
THE COURT: Okay. Okay. Counsel have any questions for this particular juror?
MR. SCHUMAKER: None from the State, Your Honor.
MR. REED: No, Your Honor. Thank you.
MR. KAVANAGH: No, Your Honor.
MS. CUSHMAN: No.
MR. GRIFFIN: No, Your Honor.
{¶ 69} After the court excused the juror, the court heard from the parties and questioned whether a curative instruction would alleviate the prejudice to the prosecution’s case, because the involuntary-manslaughter hypothetical example misstated Ohio law. The prosecution moved for a mistrial. The defense objected and urged that Juror No. 6 could be rehabilitated, but it did not ask to reopen the voir dire of the juror.
{¶ 70} The court concluded that the juror had been irreparably tainted and found that the hypothetical example she brought to court did not comport with Ohio law. The court also concluded that a curative instruction would not remedy the problem, because it could not be assured that Juror No. 6, having already violated its instructions to disregard outside information, would obey a curative instruction and would not taint other members of the panel. Counsel did not dispute that the definition did not correctly state Ohio law and that substituting an alternate juror was not possible and not permitted by Crim.R. 24. For these reasons, the court declared a mistrial and discharged the jury.
{¶ 71} Gunnell, Patterson, McAlmont, and Manns then moved to preclude retrial on double jeopardy grounds, asserting that there had been no manifest necessity for a mistrial. The trial court denied that motion and scheduled the case for retrial.
*462 {¶ 72} They then petitioned the United States district court for writs of habeas corpus seeking to bar retrial on double jeopardy grounds. The district court dismissed the petitions, concluding that the trial court’s declaration of a mistrial “was not an unreasonable application of clearly established law as declared by the United States Supreme Court.” Gunnell v. Rastatter, S.D.Ohio No. 3:08-CV-064, at 13 (Sept. 17, 2008). Manns appealed to the Sixth Circuit Court of Appeals, which affirmed the dismissal. Gunnell v. Rastatter, 6th Cir. No. 08-4505 (Jan. 26, 2010). Manns subsequently resolved her case by way of a plea agreement with the state.
{¶ 73} The trial court then retried Gunnell, McAlmont, and Patterson, and the jury returned verdicts finding them all guilty of all charges. They separately appealed, and the Second District Court of Appeals reversed the convictions. In Patterson’s and Gunnell’s cases, the court held that the trial court should have declared a mistrial because a statement of a state’s witness from a previous trial, which had not been admitted into evidence, had inadvertently been submitted to the jury. State v. Patterson, 188 Ohio App.3d 292, 2010-Ohio-2012, 935 N.E.2d 439 (2d Dist.); State v. Gunnell, 2d Dist. No. 09-CA-0013, 2010-Ohio-4415, 2010 WL 3620256, ¶ 51. And in Gunnell’s and McAlmont’s cases, the court held that double jeopardy barred retrial because no manifest necessity existed for the mistrial declared at the second trial. Gunnell at ¶ 194; State v. McAlmont, 2d Dist. No. 09-CA-21, 2010-Ohio-5879, 2010 WL 4924770, ¶2-3. The state appealed the appellate court reversals to this court. Thereafter, Patterson negotiated a plea agreement, and the state dismissed that appeal.
{¶ 74} We accepted the state’s appeal in this case to review whether the trial court acted reasonably in dealing with juror misconduct and in finding that a manifest necessity existed for a mistrial, so that the protection against double jeopardy does not bar retrial.
Law and Analysis
{¶ 75} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution safeguards the accused from repeated prosecutions for the same offense and “affords a criminal defendant a Valued right to have his trial completed by a particular tribunal.’ ” Oregon v. Kennedy, 456 U.S. 667, 671-672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). This “valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.” Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Double jeopardy principles thus do not automatically bar retrial when the trial court terminates a criminal trial without finally resolving the merits of the charges against the accused.
*463 {¶ 76} Whether a mistrial should be declared “abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.” Illinois v. Somerville, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). A declaration of a mistrial turns on the particular facts of a case and therefore escapes meaningful categorization. Id. at 464. In Somerville, the United States Supreme Court distilled a general approach for the review of a declaration of a mistrial premised on the “public justice” policy set forth in United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). See id. at 580 (“in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated”). The Somerville court instructed:
A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve “the ends of public justice” to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court.
(Emphasis added.) Id. at 464.
{¶ 77} Juror misconduct, such as a juror’s violation of a court’s charge by bringing information into the deliberating room that is not evidence, is an obvious procedural error that may subject a verdict of conviction to reversal on appeal. See State v. Sheppard, 84 Ohio St.3d 230, 233, 703 N.E.2d 286 (1998) (“The juror’s decision to ask his psychologist friend for an outside opinion constitutes juror misconduct”); In re Hamilton, 20 Cal.4th 273, 294, 84 Cal.Rptr.2d 403, 975 P.2d 600 (1999) (“When the overt event is a direct violation of the oaths, duties, and admonitions imposed on actual or prospective jurors, such as when a juror conceals bias on voir dire, consciously receives outside information, discusses the case with nonjurors, or shares improper information with other jurors, the event is called juror misconduct”). Here, Juror No. 6’s actions constituted juror misconduct: she performed independent research at home on a computer in violation of instructions to avoid and ignore extraneous information about the case, and she admitted that she intended to rely on it in deliberations and to share at least some of it with other members of the jury.
*464 D. Andrew Wilson, Clark County Prosecuting Attorney, and Andrew R. Picek, Assistant Prosecuting Attorney, for appellant.
James N. Griffin, for appellee.
Murr, Compton, Claypoole & Macbeth and Charles M. Blue, urging affirmance for amicus curiae Alicia McAlmont.
{¶ 78} In response to this misconduct, the trial court examined the juror, consulted with the parties, considered the impact of the juror’s misconduct on the fairness of the trial, and articulated its reasons for declaring a mistrial. Recognizing that the juror had already intentionally disregarded instructions on avoiding outside information, the trial court could reasonably conclude that a curative instruction would not guarantee the fairness of the proceeding, that it would be followed, or that it would prevent other members of the panel from being tainted. Further, defense counsel did not assert that the juror-obtained definition of manslaughter comported with Ohio law. In addition, the court at least considered the possibility of replacing Juror No. 6 with an alternate juror, but all parties agreed that Crim.R. 24 precluded that measure.
{¶ 79} In Washington, the United States Supreme Court directed that “the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge’s evaluation of the likelihood that the impartiality of one or more jurors may have been affected * * * ” Id., 434 U.S. at 511, 98 S.Ct. 824, 54 L.Ed.2d 717.
{¶ 80} A review of the record demonstrates that the trial court reasonably found that a manifest necessity existed to declare a mistrial in these circumstances. Accord Ross v. Retro, 515 F.3d 653, 661 (6th Cir.2008), quoting Washington at 514. (“When a mistrial is premised on the prejudicial impact of improper evidence or argument, the trial judge’s evaluation of the possibility of juror bias is entitled to ‘great deference.’ ” (Emphasis sic.))
{¶ 81} Accordingly, because (1) double jeopardy does not bar retrial where a manifest necessity exists to declare a mistrial, (2) under the circumstances of this case a manifest necessity existed for the declaration of a mistrial, and (3) the trial court did not abuse its discretion by declaring a mistrial, I would reverse the judgment of the court of appeals and remand the cause to the common pleas court for retrial.
Lundberg Stratton and Cupp, JJ., concur in the foregoing dissenting opinion.
*465 Dennis P. Will, Lorain County Prosecuting Attorney, and Billie Jo Belcher, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.